**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

WILLIAM MALIK HARRIS,

Plaintiff,

v.

ST. PETER INVESTORS, LLC;
AVIDITY REAL ESTATE SERVICES,
LLC; and GREGG STELLICK,

Defendants.

Case No. 25-cv-2237 (LMP/DLM)

**ORDER DENYING**
**MOTION FOR**
**DEFAULT JUDGMENT**
**WITHOUT PREJUDICE**

---

Plaintiff William Malik Harris brought this action on May 27, 2025, asserting various federal and state causes of action against Defendants St. Peter Investors, LLC, Avidity Real Estate Services, LLC, and Gregg Stellick.  ECF No. 1.  Avidity and Stellick have been served but have not answered.  *See* ECF No. 58.  As a result, Harris sought and was granted an entry of default from the Clerk of Court pursuant to Federal Rule of Civil Procedure 55(a), ECF No. 54, and now moves for default judgment against Avidity and Stellick under Rule 55(b), ECF No. 55.  Because an entry of default judgment at this time might lead to inconsistent judgments, the Court denies the motion without prejudice.

## BACKGROUND

On January 26, 2024, Harris signed a residential lease with Avidity, a property management company.  *Id.* at 5.[1]  At the time he signed the lease, Harris—who alleges he

---

[1]     Given Harris's pro se status, the Court is mindful to liberally construe his complaint. *See Lamar v. Payne*, 111 F.4th 902, 907 n.2 (8th Cir. 2024).

has disabilities—was granted the ability to have a service dog live in his apartment with him. *Id.* Although not named in the lease, Harris alleges that St. Peter "functioned as the de facto owner and landlord by exercising control over rent collection, lease enforcement, and lockout decisions." *Id.* at 4. Stellick, Harris alleges, is the "managing principal of both corporate Defendants." *Id.*

At some point in 2024, St. Peter initiated eviction proceedings against Harris in Minnesota state court. *Id.* at 8. In response, Harris filed a counterclaim alleging abusive housing practices. *Id.* Then, on March 27, 2025, Harris alleges that he was locked out of his apartment without warning. *Id.* at 1. While he was locked out, his service dog remained inside for 10 hours without food or water. *Id.* at 5, 13. Harris then received an emergency order from a Minnesota state court authorizing his return, but he alleges that staff initially refused to restore his access. *Id.* at 1, 7.

Harris alleges that his 10-hour lockout, and the initial refusal to grant him access to return to his apartment, constitute a calculated pattern of housing discrimination, *id.* at 11, and violated a variety of federal and state statutes, including the Fair Housing Act, 42 U.S.C. § 1981, the Fourth Amendment of the United States Constitution, similar privacy protections under the Minnesota Constitution, and the Minnesota Human Rights Act, *id.* at 11–12. Harris seeks $50,000,000 in damages. *Id.* at 2.

Relevant here, Harris repeatedly represents that Avidity and St. Peter functioned as one entity. For instance, he asserts that "Avidity's agents acted on behalf of both Avidity and St. Peter Investors, establishing joint and vicarious liability," *id.* at 4; that St. Peter assumed control of the lease signed by Avidity and Harris, *id.* at 4–5; that St. Peter filed

2

claims against him and asserted landlord authority, *id.* at 11–12; and that "[t]hese interlinked companies operated as a single enterprise—structurally fragmented on paper but unified in purpose, execution, and benefit," *id.* at 26.

Harris now moves for default judgment against Avidity and Stellick, pursuant to Federal Rule of Civil Procedure 55(b), because neither has appeared in this litigation. ECF No. 55. He argues that default judgment is proper because "liability is now established as a matter of law and damages are supported by sworn declaration." *Id.* at 1. He further asserts that although St. Peter has appeared and answered his complaint, *see* ECF No. 48, default judgment can still be entered against Avidity and Stellick because the "conduct attributed to" Avidity and Stellick "including the lockout, [emotional support animal] interference, retaliation, and statutory violations" is "factually and legally distinct from that attributed to" St. Peter, and no "joint liability exists, and no risk of inconsistent judgments is present." *Id.* at 2.

## ANALYSIS

### I.    Default Judgment

Securing a default judgment is a two-step process. First, the party seeking default judgment must apply for entry of default from the Clerk of Court. *See* Fed. R. Civ. P. 55(a). "Only after an application is made, and granted under Rule 55(a), can a plaintiff seek a Default Judgment" under Rule 55(b). *Armstrong v. Astrue*, 569 F. Supp. 2d 888, 895 n.6 (D. Minn. 2008). Here, the Clerk of Court entered default against Avidity and Stellick. ECF No. 54. As a result, Rule 55 authorizes the Court to issue a judgment against Avidity

and Stellick if the complaint shows that "the unchallenged facts constitute a legitimate cause of action." *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (citation omitted).

But "default judgments are not favored by the law and should be a rare judicial act" because "there is a judicial preference for adjudication on the merits." *Belcourt Pub. Sch. Dist. v. Davis*, 786 F.3d 653, 661 (8th Cir. 2015) (internal quotation marks omitted) (citations omitted). Whether—and when—to issue a default judgment is left to the sound discretion of the Court. *See Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 (8th Cir. 1996). Bearing on this case, a court should not enter default judgment when "co-defendants are similarly situated," and at least one has appeared in the lawsuit, because "inconsistent judgments will result if one defendant defends and prevails on the merits and the other suffers a default judgment." *Angelo Iafrate Constr., LLC v. Potashnick Constr., Inc.*, 370 F.3d 715, 722 (8th Cir. 2004). In general, "a judgment on the merits for the answering party should accrue to the benefit of the defaulting party," *id.*, so "if an action against the answering defendants is decided in their favor, then the action should be dismissed against both answering and defaulting defendants," *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001). In such a situation, a default judgment would lead to an "absurdity." *Frow v. De La Vega*, 82 U.S. 552, 554 (1872).

Here, the parties are similarly situated because they have "closely related defenses." *U.S. ex rel. Costner v. United States*, 56 F. App'x 287, 288 (8th Cir. 2003) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2690 (3d ed. 1998)); *see also Moore v. Booth*, 122 F.4th 61, 67 (2d Cir. 2024) (noting that this rule applies when the defendants are "similarly situated" or have "'closely related defenses'

4

even if not jointly liable"). Indeed, Harris's complaint alleges that St. Peter, the answering defendant, acted as his landlord and directed Avidity to take the actions it did. ECF No. 1 at 4. Further, Harris alleges that Stellick is the managing partner of both Avidity and St. Peter, and that the companies "operated as a single enterprise—structurally fragmented on paper but unified in purpose, execution, and benefit," *Id.* at 26. Should St. Peter assert a meritorious defense to any of the claims against it, it is almost certain that Harris's claims against Avidity and Stellick would likewise fail. *Farzetta v. Turner & Newall, Ltd.*, 797 F.2d 151, 154 (3d Cir. 1986) (explaining that "if at trial facts are proved that exonerate certain defendants and that as a matter of logic preclude the liability of another defendant, the plaintiff should be collaterally estopped from obtaining a judgment against the latter defendant, even though it failed to participate in the proceeding").

Harris asserts in his motion that St. Peter's appearance should not preclude entry of default judgment against Avidity and Stellick for two reasons. First, he suggests that the actions taken by Avidity and Stellick are "factually and legally distinct" from the actions taken by St. Peter. ECF No. 55 at 2. But that argument is rebutted by his complaint, in which he repeatedly suggests that Avidity and St. Peter are, in effect, the same entity. *See, e.g.* ECF No. 1 at 4–5 (alleging that St. Peter "functioned as the de facto owner and landlord by exercising control over rent collection, lease enforcement, and lockout decisions"). Second, he suggests that a default judgment is only unwarranted when liability between an answering defendant and a defaulting defendant is truly joint, not simply where the defendants are closely related. ECF No. 55 at 2. But "[a]lthough joint liability is one circumstance in which such inconsistency may arise, it is not the only one"; inconsistency

can also arise when "several defendants have closely related defenses." *Costner*, 56 F. App'x at 288 (citation omitted). Regardless, Harris himself alleges that "Avidity's agents acted on behalf of both Avidity and St. Peter Investors, establishing *joint and vicarious liability*." ECF No. 1 at 4 (emphasis added).

As a result, the Court believes that the "better approach to remedy this problem" is "to defer judgment against the defaulting party until the merits have been resolved." *Rankin v. Direct Recovery Servs., LLC*, No. 21-cv-1560 (MJD/LIB), 2023 WL 3597724, at *2 (D. Minn. May 23, 2023) (citation omitted).

## II.    Hallucinated Citations

As a final matter, the Court notes that Harris repeatedly misquotes caselaw cited in his motion and provides completely hallucinated citations. For instance, he provides purported quotations from *Pfannenstiel Architects, Inc. v. Chouteau Petroleum Co.*, 978 F.2d 430, 433 (8th Cir. 1992); *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781 (8th Cir. 1998); and *Stephenson v. El-Batrawi*, 524 F.3d 907 (8th Cir. 2008). *See* ECF No. 55 at 1–2. Each case is real and concerns the subject matter contained within the purported quotation. But the specific quotations Harris provides are not found in any of those cases. Worse, Harris provides at least two citations—*Taylor v. City of Minneapolis*, 202 F. Supp. 3d 933, 941–42 (D. Minn. 2016) and *Berg v. Copeland*, 2019 WL 1493461, at *5 (D. Minn. Apr. 4, 2019)—which do not appear to exist at all. The "Taylor" citation leads to a completely unrelated case from the Southern District of Indiana, and the "Berg" citation leads to an unrelated case from the Colorado Court of Appeals.

Given this, the Court questions whether Harris used, or more accurately misused, artificial intelligence ("AI") tools to help him draft his motion.  *See* Jessica R. Gunder, *Why Can't I Have a Robot Lawyer?  Limits on the Right to Appear Pro Se*, 98 Tul. L. Rev. 363, 406 (2024) (explaining AI technology "hallucinates," meaning "it lies about facts or invents them").  While the use of AI tools is not prohibited, Harris and all litigants have a duty to ensure the accuracy and validity of all documents and supporting authority submitted to the Court.  *See generally GenAI FAQ*, U.S. Dist. Ct., Dist. of Minn. (Oct. 1, 2025),  https://www.mnd.uscourts.gov/sites/mnd/files/GenAI_FAQ.pdf  [https://perma.cc/ZYA6-3QQS].

Whether or not it stemmed from the use of AI, Harris provided inaccurate quotes and cited nonexistent authority.  As a result, he has likely violated Federal Rule of Civil Procedure 11.  *See* Fed. R. Civ. P. 11(b) (stating, in relevant part, that an "unrepresented party" who presents a "written motion" to a federal court "certifies that to the best of the person's knowledge, information, and belief," the "legal contentions" made are "warranted by *existing* law" (emphasis added)); *see also Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 126–27 (1989) (explaining that Rule 11 imposes a "personal, nondelegable responsibility" to "validate the truth and legal reasonableness of the papers filed" in an action).  And although "pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984).  Rule 11 also authorizes the Court to impose an appropriate sanction "to deter repetition of the conduct or comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(c)(4); *see also Vallejo v. Amgen, Inc.*, 903 F.3d 733,

747 (8th Cir. 2018) (citation omitted) (recognizing that district courts have "broad discretion in the choice of sanctions"). That includes the authority to strike pleadings entirely. *Sanders v. United States*, 176 Fed. Cl. 163, 170 (2025) (citation omitted) (noting that courts have imposed a wide variety of sanctions on litigants for "citing fake, AI-generated cases," including "fines, requiring payment of the opposing party's fees, striking filings, dismissal of the action, and initiating disciplinary actions").

Because the Court has not previously warned Harris that the submission of false authority may result in sanctions, the Court will not strike his motion for default judgment. But Harris is now warned that if he continues to submit inaccurate filings, the Court will not hesitate to impose the "'steep consequences' that courts across the country have imposed for the use of fake, AI-generated sources." *Kasso v. Police Officers' Fed'n of Minneapolis*, No. 23-cv-2777 (DLM), 2025 WL 2963375, at *8 (D. Minn. Oct. 21, 2025) (internal quotation marks omitted) (citations omitted).

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this matter,

**IT IS HEREBY ORDERED** that Harris's Motion for Default Judgment (ECF No. 55) is **DENIED** without prejudice.

Dated: May 18, 2026                    *s/Laura M. Provinzino*
                                       Laura M. Provinzino
                                       United States District Judge

8